## ADAIRS v. WRIGHT.

1. CONSTRUCTION OF A CONTRACT. A contract for the sale of a mill specified that the vendor should receive a sum named, a portion of which was payable in installments maturing in six, eighteen and twenty-four months, with interest "on the whole amount *due* at ten per cent annually:" *Held*, That the interest commenced to run at the date of the contract and not at maturity of the several installments.

2. SAME: WATER POWER. Contract relating to water power considered and construed.

*Appeal from Clayton District Court.*

WEDNESDAY, OCTOBER 15.

PLAINTIFFS sold to defendant a mill and water power in Butler county, for the sum of ten thousand dollars. Five thousand dollars were paid, and a payment of three thousand dollars due in eighteen months, and a remaining one of two thousand dollars due in two years, being unpaid, this action was brought to recover the same, with interest, and to foreclose a mortgage given upon the said mill property, to secure the same. The agreement to sell, deed, and mortgage were all made on the same day—June 15, 1857. Defendant answers, admitting the contract and indebtedness as set out by plaintiffs, but setting up, by way of counter-claim and set-off, certain damages, on account of the failure of plaintiffs to keep and fulfill the covenants of

their deed, and divers obligations contained in their agreement of sale, as also upon an account for work and labor, goods and merchandise and money.

A decree was entered for plaintiffs, January 5th, 1861, for the sum of $1,049.67, and defendant appeals.

*C. H. Conklin* and *L. P. Brainard* for the appellant, as to the construction of the contract cited Par. Contr., 36, notes and cases cited; *Smith et al.* v. *The Proprietors of the First Congregational Meeting-house of Lowell*, 8 Pick., 178 ; *Taft* v. *Inhabitants of Montague*, 14 Mass., 282.; *Olmstead* v. *Beall*, 19 Pick., 528 ; *Hun* v. *Whitney*, 13 Metc., 42 ; 1 Gray, 282 ; *Jennings* v. *Camp*, 13 John., 94, and the cases there cited ; *Faxon* v. *Mansfield & Holbrook*, 2 Mass., 147 ; *Masterton* v. *The Mayor, &c., of Brooklyn*, 7 Hill, 68 ; *Griffin* v. *Colver et al.*, 16 N. Y., 489 ; Sedg. Dam., 77 ; as to the computation of interest, *Williams* v. *Sherman*, 7 Wend., 109 ; *The Bank of Utica* v. *McKinster*, 11 Id., 477; *Still* v. *Hall*, 20 Id., 52 ; Sedg. Dam., 376.

*L. L. Ainsworth* for the appellee, cited *Blanchard* v. *Ely*, 21 Wend., 342 ; *Smith* v. *Condray*, 1 How., 28 ; *Decal* v. *Arnold*, 3 Dallas, 333 ; Sedg. Dam., § 70.

WRIGHT, J.—It is reasonably apparent from the decree that the court below rejected all claims for damages, and allowed the plaintiffs the full amount claimed, with interest at ten per cent from the date of the contract, less the sum of $1,755.87, admitted to be owing defendant for goods, labor, money, &c. Some other minor items may have entered into the calculation, but this, we conclude, is substantially the view taken of the case. And, thus considered, we are met with the question made by appellants, whether plaintiffs were entitled to ten per cent interest from the date of the contract.

The agreement specifies that plaintiffs have sold their flouring mill for $10,000—$2,000 in hand, $3,000 in six months, $3,000 in eighteen months, and $2,000 in two years from date, "interest on the whole amount due at ten per cent, annually to be paid by said John F. Wright." The mortgage uses the same language precisely, as also the following: "Now if the said John F. Wright well and truly pays the above named sum of money, with the interest named, at the specified time, then this mortgage to be," &c. No notes were executed. Appellants now claim that interest did not commence until after the maturity of each payment. This, we think, is giving an importance and weight to the word "due," found in the language above quoted, not justified by all the circumstances and the whole spirit and tenor of the contract. The parties evidently used this word in the sense of unpaid. This is shown by the construction of the sentence, for if interest was only to commence after each payment matured, it would have been so stated, instead of treating all as then due. Then, again, nothing was then due, to which this language, according to appellant's construction, could apply. In addition to this, the presumption is, that the parties expected the money to be paid as it matured, and, unless they employed language quite clearly rebutting this, it is not to be supposed that they provided for interest to commence after they expected the debt to be paid. But all possible doubt is removed by the language of the mortgage, which provides that the installments are to be paid "with the interest named." And this, too, is a part of the instrument which authorizes its foreclosure, if the payments are not promptly made. In connection with these considerations, take the further fact, that defendant entered into the immediate use and occupation of the premises, and the further thought that while plaintiffs claim this interest in their petition, their right to it is not controverted by the answer, nor in any stage of

Adairs v. Wright.

the case until the parties get into this court, and it seems to us that the point is clearly with the appellees, and that in this respect the court below did not err.

The position most relied upon by appellant, however, is, that by the terms of the contract between the parties, certain matters were to be performed by plaintiffs as conditions precedent to their right to recover any portion of the purchase money. Or that, at least, he is entitled to damages for the non-performance of their contract on the part of the plaintiffs. As already stated, the agreement to sell was made June 15, 1857. As far as material, the contract was this: G. W. & W. Adair agreed to sell to Wright "their flouring mill," for which Wright was to pay $10,000, in manner as below stated. Plaintiffs agreed that said defendant "shall have sufficient water-power to properly propel three wheels now in said mill, with the machinery attached thereto (meaning three run of mill stones attached to the machinery)." "George W. Adair agrees/ to be at two-thirds of the expense of building a good apron to the dam of said flouring mill, and of putting said dam in good repair for the present, and of being at one-half of the expense of keeping said dam in good repair there-after. And the said Wright is to be at the other half of keeping said dam in good repair, and at one-third the expense of the first repair. And the said Geo. W. agrees to make any person or persons to whom he may sell water from said dam equally responsible with them for the repairs necessary on said dam, in proportion to the whole amount." The deed bears the same date, and describes the property sold thus: "The S. W. ½ of block five, on which is located the flouring mill in the town of Shellrock, as designated on the recorded plat of said town of Shellrock, together with sufficient power to properly propel the three water wheels now in said mill, at all times, when there is sufficient in the stream, together with the machinery attached thereto, and

three run of stone, with all the appurtenances now belonging to said mill and premises." This deed was signed by both the plaintiffs. The mortgage describes the property in the same way.

The town of Shellrock is located upon the W. ½ of the N. E. ¼ and the E. ½ of the N. W. ¼ Sec. 11, T. 91, R. 15. The mill in controversy is upon the south side of the stream. Upon the north side is a saw mill, and other machinery. The town was laid out by G. W. Adair and one Glenn in August, 1856, the legal title to the N. W. ¼ of the N. E. ¼ of said section (and upon which most, if not all, the "mill property" is situated) being in Adair. George W. sold and conveyed to William an undivided half interest in the S. W. ½ of block five (being the flouring mill block) and a certain amount of water to propel the machinery to be placed in the mill which they purposed to erect. The title to all the water-power, the saw mill before that time erected, the dam and all other parts of said block five being in Geo. W. Adair. When the contract was made with defendant, the mill was not completed. The dam was about five and a half or six feet high and was in a leaky condition. It was afterwards repaired, how and by whom is not very clearly shown, but probably by the joint action of both parties. Defendant has introduced a large amount of testimony to show that the dam was not high enough—that he did not have the amount of water provided for in the contract—that plaintiffs diverted the same to the saw mill, and permitted the same to be used by other parties on the north side of the stream, who, under a contract with G. W. Adair, had erected other machinery—that the head of water, instead of being sufficient to "properly propel the three wheels with the machinery attached," was at times so low that the mill had to stop, at others he could run but one pair of burrs—and at no time could he run the mill with the advantage and

profit contemplated and secured to him by the contract. His damages in these respects are estimated by witnesses at say from three to twelve or fourteen thousand dollars.

In determining these questions it becomes material to advert to the contract and settle therefrom the respective rights and obligations of the parties. And briefly we understand these to be as follows: Defendant bought the mill as it stood, with the necessary water-power, to be furnished by the dam, race and pond as then constructed. That is to say while plaintiffs agreed that defendant should have sufficient water-power to properly propel the three wheels, he was to take it from the head then furnished by the dam, if sufficient—and plaintiffs were under no obligations to add to the dam, if with or without repairs the required amount of water could be obtained. If it could not be thus obtained, then they were bound to do whatever was necessary to furnish it. The obligation to build the apron and keep the dam in repair, so far as it related to plaintiffs was upon Geo. W. and not upon both of them. As to these matters defendant had a duty to perform. A failure to fulfill his contract on the part of Geo. W. would not give defendant a right of action against the plaintiffs jointly. And of course he would have no remedy if the fault was with himself. Equally clear is the proposition that plaintiffs were only bound to furnish water when it was in the stream.

When one fact is settled, therefore, we need have no difficulty in determining the rights of these parties. And that is this: was this dam, if properly repaired—if so tightened as to suitably retain and confine the water—sufficiently high to give the required head to properly propel all the machinery there erected? If it was, then plaintiffs are not liable, for it must be remembered that the obligation to repair it is upon one and not both of them. And while defendant has introduced a great mass of testimony,

we are constrained to hold that upon this pivotal point he has most signally failed. It matters not how much he has lost by not having sufficient water power, unless this loss can be traced to a breach of the contract on the part of plaintiffs. It can avail defendant nothing in this controversy, that by using the three wheels he might have made large profits, if the inability to use them is attributable to his own fault, or that of himself and one of the plaintiffs. And as the testimony fails to satisfy us that plaintiffs were in fault, the decree must stand

Affirmed.